UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X   Civil Action No. 21-2825
TAYSHAUN WILSON, and
ANTHONY LAZARUS,                                                 **COMPLAINT**

                              Plaintiffs,              Plaintiffs Demand
     -against-                                                   Trial by Jury

SI BULLDOGS INC., CYDCOR L.L.C.,
VERIZON COMMUNICATIONS INC., and
CHRIS BUTE,

                              Defendants.
-------------------------------------------------------------X

Plaintiffs by their attorneys, DeTOFFOL & ASSOCIATES, Attorneys at Law, complains of the Defendants herein, alleging at all relevant and material times and upon information and belief, as follows:

## Nature Of The Case

Plaintiffs complain against Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e-2 *[Section 703]* (a); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a); the New York State Human Rights Law under NYS Executive Law §296 et. seq. ("NYSHRL"); New York State Executive Law §296(7); New York State Executive Law §296(6); and seeks damages to redress the injuries Plaintiffs have suffered as a result thereby for race based discrimination, hostile work environment, retaliation, and wrongful termination.

## Jurisdiction & Venue

1. Jurisdiction of this action is conferred upon the Court insofar that this action involves a federal question under Title VII of the Civil Rights Act. The Court, pursuant to

1

*Gibb*, 38 U.S. 715 (1966), also has supplemental jurisdiction over the Counts based on laws of the State of New York.

2. Venue is proper in this district under 28 U.S.C. §1391(b) and otherwise based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York and Nassau County, and plaintiffs were employed by Defendants within the Eastern District of the State of New York.

3. Plaintiffs filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and has properly exhausted the administrative remedies before initiating this action by timely filing a charge of discrimination with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letters from the EEOC [right-to-sue letters attached hereto].

## PRELIMINARY FACTS

4. Plaintiff TAYSHAUN WILSON ("Mr. Wilson") is an adult African-American individual who resides in the County of Nassau, State of New York.

5. Plaintiff ANTHONY LAZARUS ("Mr. Lazarus") is an adult African-American individual who resides in the County of Kings, State of New York.

6. Defendant CYDCOR L.L.C. ("Cydcor") is a duly formed foreign limited liability company incorporated in the State of California and is registered with the New York Department of State to conduct business in the State of New York as a foreign business.

7. Defendant SI BULLDOGS INC. ("SI Bulldogs") is a duly formed domestic business corporation formed in New York, and existing and operating under the laws of the State of New York, doing business in the State of New York.

8. Defendant VERIZON COMMUNICATIONS INC. ("Verizon") is a duly formed foreign business incorporated in the State of Delaware and is registered with the New York Department of State to conduct business in the State of New York as a foreign business.

9. Defendant CHRIS BUTE ("Supervisor") is an individual, male with supervisory authority, performance authority, and hiring and firing capacity over Plaintiffs.

10. At all relevant times, Defendant CHRIS BUTE was an owner, officer, employee, servant, agent and/or controlled independent contractor for Cydcor and SI Bulldogs.

11. On or around April 2016, Mr. Wilson entered into an employment relationship with SI Bulldogs, Verizon, and Cydcor (collectively "Employers" or "Defendants"), wherein his position title was Verizon Account Manager.

12. On or around March 2018, Mr. Lazarus entered into an employment relationship with SI Bulldogs, Verizon, and Cydcor (collectively "Employers"), wherein his position title was Verizon Account Manager.

13. In their positions as Account Managers, the Plaintiffs sell Verizon services to new and existing Verizon customers by promoting company products and services.

14. Mr. Wilson worked as a Verizon Account Manager for approximately two years competently completing his duties and consistently outpacing his co-workers in the total value of services sold, all without any poor performance review or incident.

15. Mr. Lazarus worked as a Verizon Account Manager for approximately one year competently completing his duties and consistently outpacing his co-workers in the total value of services sold, all without any poor performance review or incident.

16. Throughout their employment with the Employers, Plaintiffs were subjected to and victim of racist comments, race discrimination, race motivated adverse employment actions, and a hostile work environment.

### Facts Concerning Defendants' Unlawful Actions

17. From the outset of Plaintiffs' employment with Defendant Employers, Supervisor Bute subjected Plaintiffs to a grossly discriminatory environment that included consistent and continuous unwelcome vicious comments based on Plaintiffs' race.

18. On various occasions, Supervisor Bute would make mocking, derisive, racist comments and gestures about the Plaintiffs' race to the Plaintiffs and otherwise in their presence.

19. For example, in the Plaintiffs' presence, and on numerous occasions in 2018 and 2019, Supervisor Bute would casually use the word "Nigger" in jokes and storytelling in the Workplace.

20. Plaintiffs' complaints and objections to racial comments did not prompt any action by Supervisor Bute or the Defendant Employers.

21. Throughout the Plaintiffs' employment, Supervisor Bute conducted interviews of employment applicants for Defendant Employers.

22. Plaintiffs were aware that on occasions where African-American candidates wore their hair in hairstyles more typically worn by African-Americans, such as braids and

4

cornrows, Supervisor Bute refused to hire said individuals solely on this basis, regardless of the applicant's qualifications.

23. In 2018 and 2019, Supervisor Bute further informed Mr. Wilson that his interviews with applicants who wore their hair in styles more typically worn by African-Americans did not take as much time to complete because Supervisor Bute predetermined that the applicants' style was "ghetto" and therefore not worth considering for the position.

24. On another occasion, Supervisor Bute posted pictures of "Milk Duds" candy in a text message group constituting numerous Defendant employees and Plaintiffs, and proceeded to compare the appearance of the "Milk Duds" candy to the appearance of African American heads and Plaintiffs' heads with the purpose of embarrassing Plaintiffs.

25. On another occasion, Mr. Wilson witnessed Supervisor Bute inform an African-American employee of Defendants' that her natural hairstyle was inappropriate and insisted on paying said employee to have her hairstyle redone to resemble a stereotypical white hairstyle.

26. These remarks and comments were severe, offensive, unwelcome, and consistent with a pattern of derogatory treatment and behavior towards Plaintiffs.

27. Supervisor Bute took actions to ensure that Plaintiffs were systematically ignored and shunned by their colleagues.

28. For example, on multiple occasions in 2018 and 2019, Supervisor Bute purposely undermined Mr. Wilson's business network by telling Employers' other employees, in the presence of Plaintiffs, to "keep your distance" from Plaintiffs.

29. For example, Supervisor Wilson told a Plaintiffs' co-workers that they shouldn't be working with Mr. Wilson because of his "ghetto" background.

30. On another occasion, Supervisor Bute intentionally impeded Mr. Wilson's career by blaming Mr. Wilson for items allegedly left behind at an Airbnb lodging accommodation following a work-sponsored sales trip.

31. The items that Supervisor Bute asserted Mr. Wilson left behind were items associated with harmful stereotypes of African-Americans.

32. Supervisor Bute then posted several pictures of the items associated with harmful stereotypes of African Americans in an SMS group chat constituting Defendants' employees and stated to Mr. Wilson, "you did exactly what I thought you were going to do."

33. Plaintiffs were treated differently from similarly situated white Managers based on their race: Defendants denied African-American managers such as Mr. Wilson and Mr. Lazarus promotional opportunities, senior management positions, equal pay, bonuses, and other employment benefits.

34. For example, as part of their responsibilities as Account Managers, Plaintiffs interviewed potential candidates to hire for their sales teams.

35. Supervisor Bute often dictated the applicants that Account Managers interviewed.

36. In choosing applicants for Plaintiffs to interview, Supervisor Bute selected almost exclusively individuals he believed to be unfit for the job because of the applicant's "ghetto" appearance.

6

37. The individuals deemed "ghetto" by Supervisor Bute were always non-white applicants.

38. "Ghetto" was a term in which Supervisor Bute used interchangeably with African-American when referencing race.  Therein, Supervisor Bute intentionally created racially segregated sales teams.

39. On numerous occasions, Supervisor Bute denied Plaintiffs' requests to be assigned to affluent neighborhoods.

40. Instead, Supervisor Bute assigned Caucasian employees with less experience and sales success to affluent neighborhoods.

41. Supervisor Bute explicitly denied Plaintiffs' requests for assignment to affluent neighborhoods (areas that consistently offer a greater opportunity than poorer neighborhoods for large sale totals and therefore larger commissions) because, as Supervisor Bute explained to Mr. Lazarus, "I can't give you a Becky neighborhood because you're too ghetto."

42. Defendants discriminated against Plaintiffs by denying Plaintiffs training opportunities offered to White Account managers with less seniority than Plaintiffs on the basis of race.

43. On or about December 2, 2019, the Defendants terminated Mr. Wilson, falsely asserting that Mr. Wilson was involved in fraudulent behavior.

44. The fraudulent behavior given by Defendants as the rationale for terminating Mr. Wilson was fabricated and was a pretext for race discrimination.

45. On or about January 2020, the Employers terminated Mr. Lazarus, falsely asserting that Mr. Lazarus was involved in fraudulent behavior.

46. The fraudulent behavior given by Defendants as the rationale for terminating Mr. Lazarus was fabricated and was a pretext for race discrimination.

47. The Plaintiffs were terminated and effectively blacklisted, and prevented from obtaining employment within the subject industry because the Defendants fabricated allegations of fraud.

48. Defendants unlawfully discriminated against Plaintiffs and subjected, caused, and otherwise made them victim to discriminate racial denigration, a hostile work environment, and racially motivated adverse employment actions, including termination.

## Damages

49. Defendants' acts and omissions caused Plaintiffs to feel emotionally and physically violated and agitated, for Defendants' unfair and different treatment of them apart from other employees.

50. Defendants retaliated to Plaintiffs' rightful complaints of discrimination by wrongfully terminating Plaintiffs.

51. As a result of the acts and conduct complained of herein, Plaintiffs have suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, non-pecuniary losses, as well as pecuniary losses.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demands a punitive damage assessment against Defendants.

53. In sum, Plaintiffs seek damages for past and future lost wages, emotional distress, attorneys' fees, and punitive damages.

## FIRST COUNT
## FOR DISCRIMINATION UNDER FEDERAL TITLE VII
### (Federal Race Discrimination against Defendant Employers)

54. Plaintiffs repeat and realleges each and every allegation made in the above paragraphs of this complaint.

55. Title VII of the Civil Rights Act of 1964, as amended, states in relevant part as follows: SEC. 2000e-2. *[Section 703]* (a) "Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ..…".

56. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiffs because of their race.

## SECOND COUNT
## FOR DISCRIMINATION UNDER FEDERAL TITLE VII
### (Federal Retaliation against Defendant Employers)

57. Plaintiffs repeat and realleges each and every allegation made in the above paragraphs of this complaint.

58. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

59. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C.

§2000e *et seq.* by retaliating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

### THIRD COUNT
### FOR DISCRIMINATION UNDER STATE LAW
### (NYS Race Discrimination against all Defendants)

60. Plaintiffs repeat and realleges each and every allegation made in the above paragraphs of this complaint.

61. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

62. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiffs because of their race and creating a hostile work environment.

63. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

### FOURTH COUNT
### FOR DISCRIMINATION UNDER STATE LAW
### (NYS Retaliation against all Defendants)

64. Plaintiffs repeat and realleges each and every allegation made in the above paragraphs of this complaint.

65. New York State Executive Law §296(7) provides that it shall be an unlawful

discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

66. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiffs.

## FIFTH COUNT
## FOR DISCRIMINATION UNDER STATE LAW
### (NYS Aid & Abet)

67. Plaintiffs repeat and realleges each and every allegation made in the above paragraphs of this complaint.

68. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

69. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## Relief

WHEREFORE, Plaintiffs respectfully demands against Defendant on each and every respective Count:

(a) An award to Plaintiffs of compensatory damages in an amount to be determined at trial for all damages including but not limited to economic damages for lost past back pay and future front pay wages and attendant benefits;

(b)  An award to Plaintiffs of compensatory damages in an amount to be determined at trial for all damages including but not limited to past and future non-economic damages for humiliation, pain and suffering and emotional distress sustained;

(c)  An award to Plaintiffs of the costs of this action, including their reasonable attorney's fees to the fullest extent permitted by law;

(d)  An award of punitive damages in an amount to be determined at trial; and

(e)  Such other and further relief as this Court deems necessary and proper.

## Jury Demand

Plaintiffs request a jury trial on all issues to be tried.

Dated: New York, New York
May 19, 2021

_____

Joshua Gittleman, Esq.
DeTOFFOL & ASSOCIATES, Attorneys at Law
125 Maiden Lane. Suite 5C
New York, New York  10038
Tel. (212) 962-2220
Attorneys for Plaintiff